UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAMS FIELD SERVICES GROUP LLC, | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | Case No. 06-CV-0530-CVE-SAJ |
| GENERAL ELECTRIC INTERNATIONAL INC., GE ENERGY SERVICES, and QUALIFIED CONTRACTORS, INC., | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion for Partial Judgment on the Pleadings (Dkt. # 42). Defendants General Electric International Inc. ("General Electric"), GE Energy Services ("GE Services"), and Qualified Contractors, Inc. ("QCI") seek partial judgment on the pleadings with regard to certain claims for relief of, and damages sought by, plaintiff Williams Field Services Group LLC ("Williams"). Dkt. # 42, at 6. For the reasons set forth below, the Court finds that the motion should be **granted** in part and **denied** in part.

I.

The instant civil action arises from the June 2004 Agreement between Williams and General Electric for the overhaul of three gas turbines located at Williams' Ignacio gas processing plant near Durango, Colorado. Dkt. # 2, at 2-3. The Agreement provided that the overhaul of the three turbines would involve the removal of the first turbine and replacement with a refurbished General Electric turbine then owned by General Electric; replacement of the second turbine with the refurbished first turbine; and replacement of the third turbine with the refurbished second turbine.

Id. at 3. The work was to be completed over a period of approximately one year, with the downtime per unit exchange lasting approximately six days.[1] Dkt. # 31-2, at 6. Defendant QCI, as General Electric's "Contractor," oversaw the field work relating to the removal, installation, and reinstallation of the turbines.[2] Id. at 5. Defendant GE Services, on the other hand, was to staff the exchange out operation "to provide project management, technical direction, start-up services and labor supervision."[3] Id. at 3.

The exchange out operation did not go as planned, however. The project incurred delays and additional costs. See Dkt. # 2, at 4. Accordingly, Williams filed the instant action on September 29, 2006. Id. at 1. In the complaint, Williams alleges that its first turbine was never reinstalled at its plant, and that General Electric has refused to abide by the terms of the Agreement in refurbishing the two remaining turbines. Id. at 4-5. Williams seeks, among other things, damages for breach of contract, negligence, and negligent misrepresentation. Id. at 8, 10-11. With regard to its breach of contract claim, Williams seeks "damages in an amount equal to the difference between the costs Williams will have to pay to third parties to refurbish the remaining two turbines and the amount set forth . . . in the Agreement, as well as damages for loss of capacity at the Ignacio gas plant in excess of the time period set forth in the Agreement." Id. at 8. With respect to its tort claims, Williams asserts that defendants "acted negligently in refurbishing the [General Elctric]

---

[1] The Agreement is attached to defendants' amended answer (see Dkt. # 31-2), and thus the Court may consider this document in ruling on defendants' motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c). See discussion infra Part II.

[2] QCI was not a signatory to the Agreement. Dkt. # 31-2, at 30.

[3] Defendants argue that GE Services is not a proper party to this action because it "was not a party or signatory to the Agreement and had no involvement, in any capacity, with the facts underlying this lawsuit." Dkt. # 42, at 5 n.1. Nevertheless, GE Services joins the motion for partial judgment on the pleadings.

turbine and Williams' first turbine," id. at 10, and that Williams "justifiably relied upon [General Electric]'s misrepresentations of existing material fact with respect to the prices and terms set forth in the Agreement," id. at 11. Williams seeks compensatory and punitive damages for these claims. Id. at 10, 12.

The Agreement contains several provisions relevant to Williams' claims. The Agreement provides, and the parties agree, that Williams' claims are governed by Colorado law.[4] Dkt. # 31-2, at 33. The Agreement also contains an integration clause, which states:

> This Contract represents the entire agreement between the parties and no modification, amendment, rescission, waiver or other change shall be binding on either party unless assented to in writing by the parties' authorized representatives. Any oral or written representations, warranty, course of dealing or trade usage not contained or reference [sic] herein shall not be binding on either party. Each party agrees that it has not relied on, or been induced by, any representations of the other party not contained in the Contract.

Id. at 34. The Agreement states that "[a]ll Work" shall be "performed in accordance with established industry practices" and that QCI must "conduct all work in accordance with Industry Standards and the manufacture[r]s guide lines by following all GE specifications, standards, and

---

[4] The Court finds that the parties choice of law is enforceable. "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). Here, the forum state is Oklahoma. Oklahoma law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." OKLA. STAT. tit 15, § 162; see Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985) ("Oklahoma courts have enforced contract clauses which specifically designate a place of performance or which provide that the law of a particular jurisdiction will apply."). The Agreement provides that "the Contract shall be construed and interpreted in accordance with the laws of the state in which Buyer's facility for which the Services are performed is located." Dkt. # 31-2, at 33. The Agreement further provides that "[t]he Work is to be done at the [Williams] site located in Durango, CO." Id. at 9. Therefore, the parties' choice of law provision is enforceable under Oklahoma law.

3

recommended practices . . . ." <u>Id.</u> at 5-6. The Agreement also limits defendants' liability. Under the heading "**Limitation of Liability**," the Agreement provides:

> In no event, whether as a result of breach of contract, indemnity, warranty, tort (including negligence), strict liability, or otherwise, shall Seller or its subcontractors or suppliers be liable to Buyer for loss of profit or revenues, loss of use of the Buyer's Equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities, services or replacement power, downtime costs, or for any special, consequential, incidental, indirect or exemplary damages.

<u>Id.</u> at 33 (emphasis in original). "Seller," as used in this provision, is defined as "Seller, its affiliates, and their respective agents and employees, whether individually or collectively." <u>Id.</u>

Defendants now move for partial judgment on the pleadings based on the unambiguous terms of the Agreement and as a matter of law. According to defendants, the Limitation of Liability provision in the Agreement precludes consequential and exemplary damages, and Colorado law bars Williams' negligence and negligent misrepresentation claims.

**II.**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>Nelson v. State Farm Mut. Auto Ins. Co.</u>, 419 F.3d 1117, 1119 (10th Cir. 2005). Thus, a court must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." <u>Id.</u> (internal quotation marks and citation omitted); <u>Ramirez v. Dept. of Corr., State of Colo.</u>, 222 F.3d 1238, 1241 (10th Cir. 2000). To survive judgment, a "complaint must contain enough facts to state a claim to relief that is plausible on its face." <u>Anderson v. Suiters</u>, 499 F.3d 1228, 1232 (10th Cir. 2007) (internal quotation marks and citation omitted). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of

4

law.'" Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). Fed. R. Civ. P. 12(d) further provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Hence, under Rule 12(c), a court should consider only matters in the pleadings or incorporated by reference in, or attached to, the answer or complaint. Park Univ. Enters., Inc., 442 F.3d at 1244; GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

Here, defendants argue that this Court "should consider the parties' Agreement" because a copy is attached to defendants' amended answer. See Dkt. # 31-2. The Court agrees. Park Univ. Enters., Inc. held that a court is "permitted to treat exhibits attached [to a pleading] as part of the pleadings." 442 F.3d at 1247. Thus, the Agreement is not considered outside the pleadings and will be considered by this Court under Rule 12(c).

**III.**

Defendants move for partial judgment on the pleadings on three grounds. First, defendants aver that Williams' requests for consequential and exemplary damages are barred, because these claims are expressly precluded by the unambiguous terms of the parties' Agreement. Dkt. # 42, at 6. Second, defendants aver that judgment should be granted in their favor on Williams' negligence claim, because Colorado's "economic loss rule" precludes recovery for negligence in the absence of an independent duty of care under tort law. Id. at 7. Third, defendants assert that Williams' negligent misrepresentation claim should be dismissed because Williams has failed to state, and

5

cannot state, the necessary elements for such a claim.[5] Id.; Dkt. # 53, at 6. The Court considers each of these arguments in turn.

### A.  Limitation of Liability

Under Colorado law, a court must enforce an unambiguous contract according to its plain language. See Griffin v. United Bank of Denver, 599 P.2d 866, 868 (Colo. 1979) ("In construing a document, courts may not rewrite the provisions thereof, but must enforce an unambiguous contract in accordance with its terms."). Here, Williams does not contend that the Agreement is ambiguous. See Dkt. # 48, at 11. Williams also does not dispute that the plain language of the Limitation of Liability clause in the Agreement precludes recovery of consequential damages on its breach of contract claim. In fact, Williams' response fails to directly address this issue. See Dkt. # 48, at 11-15. Moreover, Williams concedes that "provisions purporting to release or limit liability apply only to duties created by the contract containing such provisions, and have no application to actions involving negligent  misrepresentation unless they are couched in clear and specific language." Id. at 9 (emphasis added). Thus, the Court finds that judgment on the pleadings should be granted as to consequential damages for Williams' breach of contract claim. As to Williams' other requests for consequential and exemplary damages, however, the Court finds that recovery hinges, at least in part, on the viability of Williams' negligence and negligent misrepresentation claims.

---

[5]  Because Williams includes a request to amend the complaint in its response, the standard of review applicable to Williams' third argument involves dismissal rather than judgment. See discussion infra Part III.C.

### B. Negligence and the Economic Loss Rule

Colorado courts have adopted the "economic loss rule," which provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." Town of Alma v. Azco Constr., Inc., 10 P.3d 1256, 1264 (Colo. 2000); Grynberg v. Agri Tech, Inc., 10 P.3d 1267, 1269 (Colo. 2000). Economic loss includes those "damages other than physical harm to persons or property." Town of Alma, 10 P.3d at 1264. Colorado courts apply the economic loss rule "for three main policy reasons": (1) to distinguish clearly between contract and tort law; (2) to enforce the parties' expectancy interests as expressed by their allocation of risks and costs during the bargaining process; and (3) "to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort." BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004). The absence of a direct contractual relationship between commercial parties does not preclude application of the rule. See id.

Whether the economic loss rule bars a negligence claim turns on whether the defendant owed the plaintiff a duty of care external to the contract. A.C. Excavating v. Yacht Club II Homeowners Assoc., Inc., 114 P.3d 862, 866 (Colo. 2005). This is a question of law to be determined by a court. Id. In making this determination, a court should focus on the contractual setting between the parties. BRW, 99 P.3d at 74. Three factors guide the inquiry: (1) whether the relief sought in negligence is the same as that sought in contract; (2) whether a common law, negligence-based duty of care exists; and (3) "whether the negligence duty differs in any way from the contractual duty." Id.; see Grynberg, 10 P.3d at 1270. If no duty of care exists independent of the contract, a plaintiff's negligence claim must necessarily fail. BRW, 99 P.3d at 74.

Here, the Court finds that the economic loss rule precludes Williams' negligence claim, which asserts only economic damages. Williams argues that its negligence claim arises "not from [a] breach of a standard of care arising under the Agreement, but under a separate, independent duty of care." Dkt. # 48, at 19. Yet, Williams offers nothing more to satisfy BRW's three factor test. First, Williams fails to specify anywhere in its response or complaint the origin of this "separate, independent duty of care." Even if this Court were to assume this duty of care stemmed from the common law, which it does not, Williams does not explain the basis for this duty. See Grynberg, 10 P.3d at 1270 (emphasizing the plaintiff's failure to cite any support for its proposition that an independent duty of care existed). Williams does not, for example, point to "a special relationship," which by its "nature automatically trigger[s] an independent duty of care" and which may form the basis of a tort action "even when the parties have entered into a contractual relationship." Town of Alma, 10 P.3d at 1263. Similarly, Williams does not point to any statutory provision that may form the basis of this alleged separate duty. See A.C. Excavating, 114 P.3d at 868-69 (finding that an independent duty of care may derive from Colorado statutes). Instead, Williams simply avers that the Agreement contained "no such 'duty of care'," which clearly does not satisfy the BRW test.

Second, Williams fails to state how this purported separate, independent duty differs in any way from the duties set forth in the Agreement. See Grynberg, 10 P.3d at 1270 ("Moreover, the [plaintiffs] fail to explain how a 'common law duty' would impose a different duty of care on [defendants] than that already provided for by contract."). In the complaint, Williams claims that defendants acted negligently in refurbishing the turbines. Dkt. # 2, at 10. Williams alleges nothing other than the Agreement as the basis for this claim. See id. The Agreement warranted that the services provided would be performed in accordance with industry standards and practices, see Dkt.

# 31-2, at 5-6, and the Court finds that these guarantees formed the contractual duty of care. See Town of Alma, 10 P.3d at 1264 (determining that the contractual provisions demonstrated the express assignment of a contractual duty of care). Therefore, even if the Court accepts all the well-pleaded factual allegations in the complaint as true and views them in the light most favorable to Williams, the Court cannot find that the contractual duty of care differs in any way from a purported separate duty to refurbish the turbines in a non-negligent manner. As set forth in BRW, 99 P.3d at 74, if no duty of care exists independent of the contract, a plaintiff's negligence claim must necessarily fail. The Court concludes, therefore, that judgment should be granted for defendants as to Williams' negligence claim.

### C. Negligent Misrepresentation

With respect to negligent misrepresentation, Williams' response asserts factual allegations that are not included in the complaint. Williams asserts that unlike other companies who had not manufactured the turbines, General Electric represented during the bidding process that it "was in present possession of a process and procedure by which refurbishment could be accomplished with only six days of downtime" Dkt. # 48, at 16. Williams further asserts that "prior to the execution of the Agreement, [General Electric] had information which established that it did not have [the represented refurbishment] capability or process." Id. at 23. Williams claims that it "has uncovered evidence since the filing of its Complaint" that General Electric "willfully and intentionally ignored this information and made its representation to [Williams] in order to induce [Williams] to execute the Agreement." Id. at 16. Additionally, in the last sentence of Williams' response to defendants' motion, Williams adds that "[i]n the event the Court should find merit to any of Defendants' arguments, [Williams] respectfully requests that it be allowed to amend its Complaint to more

specifically state its allegations in light of evidence received since the filing of its Complaint." Id. at 24.

In the Tenth Circuit, a court may consider issues raised for the first time in a response to a dispositive motion as a request to amend the complaint pursuant to Fed. R. Civ. P. 15. See Viernow v. Euripides Dev. Corp., 157 F.3d 785, 790 n.9 (10th Cir. 1998). Accordingly, this Court interprets Williams' response as a limited request for leave to amend the complaint. Rule 15(a) provides that "leave shall be freely given when justice so requires." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted); Duncan v. Manager, Dep't. of Safety, 397 F.3d 1300, 1315 (10th Cir. 2005); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004). The purpose of Rule 15(a) is to "provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Minter, 451 F.3d at 1204 (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)). Nevertheless, a court may deny leave to amend if the amendment would be futile. Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007). A proposed amendment is futile if the new claim would be subject to dismissal. Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006); Bradley v. J.E. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004).

Defendants oppose Williams' proposed amendment on futility grounds. They claim the amendment "would be futile since, as currently pled and/or as putatively pled under Williams' new theory, Williams cannot state a claim for negligent misrepresentation under Colorado law." Dkt. # 53, at 6. According to defendants, "[a] necessary element of a claim for negligent misrepresentation," which Williams cannot meet, is that "the defendant gave information to the plaintiff for use in a business transaction with a third party." Van Heerden v. Total Petroleum, Inc.,

10

942 F. Supp. 468, 474 (D. Colo. 1996) (Judge Kane decision); see Grubka v. WebAccess Int'l, Inc., 445 F. Supp. 2d 1259, 1270 (D. Colo. 2006) (Judge Babcock decision); Stat-Tech Liquidating Trust v. Fenster, 981 F. Supp. 1325, 1343 (D. Colo. 1997) (Judge Kane decision); Snoey v. Advanced Forming Tech., Inc., 844 F. Supp. 1394, 1400 (D. Colo. 1994) (Judge Kane decision); Colorado Nat'l Bank of Denver v. Adventura Assoc., L.P., 757 F. Supp. 1167, 1173 (D. Colo. 1991) (Judge Babcock decision).

Colorado National Bank is the foundational decision that established this third party "requirement" for negligent misrepresentation claims. In Colorado National Bank, 757 F. Supp. at 1171, the court began its analysis by explicitly recognizing that "[t]he Restatement and Colorado authority are unclear whether an element of a claim for negligent misrepresentation is that the information be supplied for use in a transaction not involving the defendant." The court referred to the Restatement because Colorado has adopted the Restatement's definition of negligent misrepresentation. See Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 71 (Colo. 1991). A party may be liable for negligent misrepresentation if he "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." RESTATEMENT (SECOND) OF TORTS § 552(1). This Court finds that the plain language of section 552(1) does not state that a third party is a necessary element to state a negligent misrepresentation claim. Colorado National Bank derived the third party requirement from Illinois — not Colorado — case law. See 757 F. Supp. at 1171. The court in Colorado National Bank found that Colorado case law merely could "be read consistently with the [third party] requirement[,]" and that the Colorado Jury Instructions, as well as policy interests, supported this view. Id. at 1173.

11

Neither the Colorado Supreme Court nor the Tenth Circuit has expressly adopted Colorado National Bank's view in the seventeen years since the decision. In Keller,[6] for example, the Colorado Supreme Court upheld purchasers' negligent misrepresentation claim against a manufacturer. 819 P.2d at 72. The court held that "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations." Id. As to whether the purchasers were required to show that the manufacturer "was in the business of supplying information for the guidance of others in their business transactions with third parties," the court declined the manufacturer's "invitation to explore in the abstract this portion of section 552(1)." Id. at 73. In Colorado Visionary Academy v. Medtronic, Inc., 397 F.3d 867, 871 (10th Cir. 2005), the Tenth Circuit held that a claim of negligent misrepresentation under Colorado law may arise from an adversarial bargaining situation between a lessor and potential lessee. The Circuit found that "the tort of negligent misrepresentation can arise from ordinary, arm's length bargaining that was expected to lead to a contractual relationship." Id. at 874. Although the case involved contract negotiations as opposed to an executed contract, the Circuit did not mention the third party requirement. The Circuit did mention the third party requirement in United International Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000), however, as one of three scenarios which could give rise to a negligent misrepresentation claim under Colorado law: (1) where a party to a contract has deliberately made material false representations of past or present fact; (2) where a party to a contract has intentionally failed to disclose a material past or present fact;

---

[6] Keller was decided almost eight months after Colorado National Bank, and Keller did not discuss or adopt the Colorado National Bank analysis.

or (3) where a party to a contract has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party. Id. The Court finds that the controlling precedent does not intimate that a third party is always an element of a negligent misrepresentation claim. Therefore, this Court declines to follow Colorado National Bank at this juncture.

Nonetheless, defendants aver that amendment would be futile because Williams' negligent misrepresentation claim is precluded by the express terms of the Agreement. To the extent Williams may claim that General Electric negligently represented existing material facts prior to formation of the Agreement, defendants argue that the integration clause in the Agreement precludes such a claim. Dkt. # 53, at 9. According to defendants, the integration clause in the Agreement is clear and specific in its prohibition of Williams' negligent misrepresentation claim as required by Keller, 819 P.2d at 74 (holding that a provision purporting to prohibit a negligent misrepresentation claim must be "couched in clear and specific language"). The integration clause states that the Agreement represents the "entire agreement between the parties" and that "[a]ny oral or written representations, warranty, course of dealing or trade usage not contained or reference[d] herein" is not binding on either party. Dkt. # 31-2, at 34. Each party agreed that it neither relied on, nor was induced by, "any representations of the other party not contained in the Contract." Id.

Defendants' argument ignores, however, another principle in Keller: "Integration clauses generally permit contracting parties to limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document." 819 P.2d at 72. Even if the integration clause in the Agreement "clearly and specifically disclaim[ed] reliance by [] [Williams] on all representations made by [General Electric] prior to the execution of the contract," id. at 74,

13

defendants' argument disregards the fact that the contested representation lies in the express terms of the Agreement. Unlike in Keller, the representations here were not contained in separate video tapes, brochures, and literature, 819 P.2d at 71, but were contained in the actual Agreement itself. The integration clause in the Agreement, by its express terms, cannot limit liability for the alleged misrepresentation.

Of course, to the extent Williams' response could be interpreted as alleging a representation other than the six-day representation contained in the Agreement, the Court notes that the integration clause in the Agreement is sufficiently clear and specific to preclude a misrepresentation claim based on such an external representation. The integration clause in the Agreement, unlike the ineffective clause in Keller, "clearly and specifically disclaims reliance by [] [Williams] on all representations made by [General Electric] prior to the execution of the contract." 819 P.2d at 74; see Student Mktg. Group, Inc. v. Coll. P'ship, Inc., 247 Fed. Appx. 90, 98-99 (10th Cir. 2007) (unpublished Table decision) (finding that specific and unambiguous integration clause prohibited the plaintiff's negligent misrepresentation claim).[7] The integration clause unambiguously states that the parties neither relied on, nor were induced by, "any representations of the other party not contained in the Contract." Dkt. # 31-2, at 34.

Defendants also argue that Williams' misrepresentation claim is prohibited by the terms of the Limitation of Liability clause in the Agreement. Dkt. # 53, at 4. The Colorado Supreme Court has held that an exculpatory clause, "which attempts to insulate a party from liability from his own negligence" can in no event "shield against a claim for willful and wanton negligence," Jones v.

---

[7] Unpublished decisions are not precedential, but may be cited for their persuasive value. Fed. R. App. 32.1; 10th Cir. R. 32.1.

14

Dressel, 623 P.2d 370, 376 (Colo. 1981); see Chadwick v. Colt Ross Outfitters, 100 P.3d 465, 467 (Colo. 2004) ("In no event will an exculpatory agreement be permitted to shield against a claim of willful and wanton negligence."). While defendants argue that the Limitation of Liability provision does not qualify as an "exculpatory clause," Dkt. # 53, at 4, the Court finds that this argument disregards the plain language of the provision. The provision attempts to insulate defendants, in no uncertain terms, from liability for "special, consequential, incidental, indirect or exemplary damages" arising from "tort (including negligence), strict liability, or otherwise." Dkt. # 31-2, at 33. Such insulation from liability easily fits within the basic definition of an exculpatory clause, which is defined as "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act." BLACK'S LAW DICTIONARY (8th ed. 2004). Thus, the Court finds that the Limitation of Liability provision cannot shield defendants from liability for willful and wanton negligence under Colorado law.

Nevertheless, the Court cannot predict presently whether Williams' proposed amendment is subject to dismissal as a matter of law. To the extent defendants argue that the economic loss rule bars Williams' proposed amendment, the economic loss rule does not bar misrepresentation claims based on principles of tort law, which are independent of any principle of contract law. See United Int'l Holdings, Inc., 210 F.3d at 1227 ("A negligent misrepresentation claim is based not on a contractual duty but on an independent common law duty . . . ."). Colorado law is unclear, however, whether a claim of willful and wanton misrepresentation arising from representations contained within the contract is based on independent principles of tort law. In Keller, the court held that "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim . . . ." 819 P.2d at 72. The

15

representations in <u>Keller</u> arose not from the contractual terms but from separate video tapes, brochures, and literature. <u>Id.</u> at 71. In <u>BRW</u>, on the other hand, the court held that an alleged misrepresentation that "occurr[s] during performance" of the contract cannot form the basis of a viable negligent misrepresentation claim. 99 P.3d at 75. The court found that, under <u>Keller</u>, the alleged misrepresentation must occur prior to the execution of the contract, which incorporates the parties' finalized expectancy interests and allocation of risks. <u>Id.</u> The court further found that because the plaintiff alleged that the defendant "breached . . . the duty [that] [wa]s contained in the interrelated contracts, the economic loss rule bar[red] the negligent misrepresentation claim." <u>Id.</u>

While the Court recognizes that Williams' negligent misrepresentation claim as originally pled would have been subject to judgment under <u>BRW</u>, the Court cannot reach the same conclusion with regard to Williams' allegations of willful and intentional misrepresentation. As set forth in <u>BRW</u>, courts are to apply the economic loss rule to promote the rule's three main policy objectives of distinguishing between contract and tort law, of enforcing the parties' expectancy interests, and of encouraging the incorporation of cost considerations into the contract. <u>Id.</u> at 72. Simply put, <u>BRW</u> did not address the type of claim here. Ostensibly, Williams and defendants could not have factored into their "allocation of risks, duties, and remedies" willful and wanton misrepresentations because of the very nature of these claims. <u>Id.</u> at 75. Thus, the Court cannot say, at this juncture, that Williams' proposed amendment is futile under Colorado law.

For purposes of Rule 15(a), therefore, the Court finds that Williams should be granted leave to amend its complaint insofar as it relates to the current negligent misrepresentation claim. Once the complaint is amended — and Williams' factual allegations are plainly stated — defendants may move for relief under Fed. R. Civ. P. 12, and either party or both parties may request that the Court

certify a question of law to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21.1(a).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Judgment on the Pleadings (Dkt. # 42) is **granted** in part and **denied** in part: it is granted as to plaintiff's negligence claim; it is granted as to consequential damages for plaintiff's breach of contract claim; it is denied as to plaintiff's negligent misrepresentation claim, subject to renewal after amendment.

**IT IS FURTHER ORDERED** that plaintiff's limited request to amend the complaint is **granted**. Plaintiff may file an amended complaint to conform to this Opinion and Order no later than **February 28, 2008.**

**DATED** this 15th day of February, 2008.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT