UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILLIAMS FIELD SERVICES GROUP LLC,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 06-CV-0530-CVE-FHM |
| **GENERAL ELECTRIC INTERNATIONAL INC., GE ENERGY SERVICES, and QUALIFIED CONTRACTORS, INC.,** ) ) ) ) ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is defendants' renewed motion for partial judgment on the pleadings (Dkt. # 116). Defendants seek partial judgment on the pleadings with respect to certain claims for relief asserted by plaintiff Williams Field Services Group LLC. For the reasons set forth below, the Court finds that defendants' motion should be granted in part and denied in part.

**I.**

In June 2004, Williams and General Electric International, Inc. ("GEII") entered into an agreement (the "Agreement")[1] for the overhaul and/or upgrade of three gas turbines located at Williams' Ignacio gas processing plant near Durango, Colorado. Dkt. # 103, at 2-3. The Agreement provided that the overhaul of the three turbines was to be completed over a period of approximately

---

[1] Defendants argue that GE Energy Services ("GEES") and Qualified Contractors, Inc. ("QCI") are not parties to the Agreement, and plaintiff's contract based claims against those entities should be dismissed. Plaintiff admits that it has no contract with either entity. Dkt. # 122, at 9. Accordingly, plaintiff's contract claims are dismissed as to GEES and QCI only. See Broderick v. McElroy and McCoy, Inc., 961 P.2d 504, 506 (Colo. Ct. App. 1998) (stating that "provisions of a contract cannot be enforced against those who are not parties to the contract"). However, plaintiff is not precluded from recovering against defendants GEES and QCI on its fraud and fraudulent concealment claims.

one year, with the downtime per unit exchange lasting approximately six days.[2]  Dkt. # 106-2, at 6. Defendant QCI, as GEII's "Labor Broker," was responsible for the "quality of work and acts of the craft labor being supervised at the site throughout performance of the site work."  Dkt. # 103, at 4. Defendant GEES, on the other hand, was to staff the refurbishment operation by "provid[ing] project management, technical direction, start-up services and labor provision [sic]."  Id.

The Agreement contains several provisions relevant to defendants' motion.[3]  The Agreement contains an integration clause, which states:

> This Contract represents the entire agreement between the parties and no modification, amendment, rescission, waiver or other change shall be binding on either party unless assented to in writing by the parties' authorized representatives. Any oral or written representation, warranty, course of dealing or trade usage not contained or reference [sic] herein shall not be binding on either party.  Each party agrees that it has not relied on, or been induced by, any representations of the other party not contained in the Contract.

Dkt. # 106-2, at 34.  The Agreement states that "[a]ll Work" shall be "performed in accordance with . . . established industry practices," and that QCI must "conduct all work in accordance with Industry Standards and the manufacture[r]s guide lines by following all GE specifications, standards, and recommended practices . . . ."[4]  Id. at 5-6.

---

[2]  The Agreement is attached to defendants' amended answer (see Dkt. # 106-2), and thus the Court may consider this document in ruling on defendants' motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c).  See infra Part II.

[3]  The Agreement provides, and the parties agree, that plaintiff's claims are governed by Colorado law.  Dkt. # 106-2, at 33.  The Court previously held that the parties' choice of law is enforceable.  See Dkt. # 60, at 3 n. 4.

[4]  QCI was not a signatory to the Agreement.  Dkt. # 106-2, at 30.

2

The Agreement also limits defendants' liability. Under the heading "**Limitation of Liability**," the Agreement provides:

> In no event, whether as a result of breach of contract, indemnity, warranty, tort (including negligence), strict liability, or otherwise, shall Seller or its subcontractors or suppliers be liable to Buyer for loss of profit or revenues, loss of use of the Buyer's Equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities, services or replacement power, downtime costs, or for any special, consequential, incidental, indirect or exemplary damages.

Id. at 33. "Seller," as used in this provision, is defined as "Seller, its affiliates, and their respective agents and employees, whether individually or collectively." Id.

After work began on the project, defendants began to incur delays and additional costs. See Dkt. # 103, at 5. As a result, plaintiff filed a complaint on September 29, 2006. Dkt. # 2. In the complaint, Williams alleged that its first turbine was never reinstalled at its plant, and that GEII refused to abide by the terms of the Agreement in refurbishing the two remaining turbines. Dkt. # 103, at 4-5.

Defendants moved for partial judgment on the pleadings on plaintiff's claims for consequential and exemplary damages, negligence and negligent misrepresentation. On February 15, 2008, the Court entered an Opinion and Order (the "Order") granting in part and denying in part defendants' motion. Dkt. # 60. Defendants' motion was granted as to plaintiff's negligence claim and as to consequential damages for the breach of contract claim; it was denied as to plaintiff's negligent misrepresentation claim, subject to renewal after amendment. Dkt. # 60.

Plaintiff subsequently filed an amended complaint (Dkt. # 61) and a second amended complaint (Dkt. # 103), asserting the following claims for relief: (1) declaratory judgment against GEII that the Agreement is a fixed price contract; (2) termination of the contract against GEII; (3) breach of contract against all defendants; (4) breach of the implied duty of good faith and fair

dealing against GEII; (5) specific performance against GEII; (6) negligent misrepresentation against GEII; (7) willful and wanton misrepresentation against GEII; and (8) fraud and fraudulent concealment against all defendants. Dkt. # 103. Defendants filed this renewed motion for partial judgment on the pleadings. Dkt. # 116.

**II.**

On a Rule 12(c) motion for judgment on the pleadings, a court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff. See, e.g., EEOC v. W.H. Braum, Inc., 347 F.3d 1192, 1195 (10th Cir. 2003); Ramirez v. Dep't of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000). Documents attached to the pleadings may be considered part of the record in a motion for judgment on the pleadings. See Park University Enterprises, Inc. v. American Cas., 442 F.3d 1239, 1244 (10th Cir. 2006). A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Nelson v. State Farm Mut. Auto. Ins. Co., 419 F.3d 1117, 1119 (10th Cir. 2005).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The claim must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." Id.

(citations omitted). When deciding whether to grant a motion to dismiss, a court must accept all the well-pleaded allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). Nonetheless, a court need not accept as true those allegations which are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 127 S. Ct. at 1974.

### III.

Defendants move for partial judgment on the pleadings on the grounds that plaintiff's amended claim for negligent misrepresentation, and claims for willful and wanton misrepresentation, and fraud and fraudulent concealment are legally insufficient. In the alternative, defendants argue that the economic loss rule and the limitation of liability clause in the Agreement preclude recovery on plaintiff's fraud and fraudulent concealment claims.[5]

---

[5] In defendants' original motion for judgment on the pleadings (Dkt. # 42), defendants argued that the economic loss rule should preclude plaintiff's negligence and negligent misrepresentation claims. Defendants' motion was granted in part, and the Court held that the economic loss rule precluded plaintiff's negligence claim. However, because plaintiff was granted leave to amend its negligent misrepresentation claim, the Court did not reach the question of whether the economic loss rule would bar a negligent misrepresentation claim. Accordingly, the issue of whether the economic loss rule applies to plaintiff's negligent misrepresentation claim is preserved. However, because defendants are entitled to judgment on the pleadings on plaintiff's negligent misrepresentation claim on other grounds, it is again unnecessary for the Court to reach defendants' economic loss rule argument as to plaintiff's negligent misrepresentation claim.

A.      **Negligent Misrepresentation Claim Against GEII**

Defendant GEII contends that, in order to survive a motion for judgment on the pleadings, plaintiff's amended negligent misrepresentation claim must allege the existence of a misrepresentation as to a past or presently existing fact expressly stated in the Agreement.[6]

As an initial matter, to the extent plaintiff may claim that GEII negligently represented existing material facts prior to formation of the Agreement, defendants argue that the integration clause in the Agreement precludes such a claim. Generally, integration clauses "allow contracting parties to limit future contractual disputes to issues relating to the express provisions of the contract." Keller v. A.O. Smith Harvestore Prods., 819 P.2d 69, 72 (Colo. 1991). Here, the integration clause states that the Agreement represents the "entire agreement between the parties" and that "[a]ny oral or written representations, warranty, course of dealing or trade usage not contained or reference[d] herein" is not binding on either party. Dkt. # 106-2, at 34. Each party represented upon signing the Agreement that it neither relied on, nor was induced by, "any representations of the other party not contained in the Contract." Id. According to GEII, the integration clause in the Agreement is clear and specific in its prohibition of plaintiff's negligent misrepresentation claim. See Keller, 819 P.2d at 74 (holding that a provision purporting to prohibit a negligent misrepresentation claim must be "couched in clear and specific language"). In the Order (Dkt. # 60), the Court held that the integration clause in the Agreement unambiguously states that

---

[6]    In its response to defendants' first motion for partial judgment on the pleadings, plaintiff claimed that GEII "willfully and intentionally ignored" information that it was not presently capable of completing the refurbishment of the turbine in six days. Dkt. # 42. Plaintiff requested leave to amend its complaint to "more specifically state its allegations." Dkt. # 48, at 24. Thus, plaintiff's second amended complaint contains a claim for relief on the basis of "willful and wanton misrepresentation." See infra Part III B.

the parties neither relied on, nor were induced by, "any representations of the other party not contained in the Contract." Dkt. # 31-2, at 34. Moreover, where a contract is between two sophisticated parties involved in a complex transaction, the Court will not rewrite the contract to circumvent the clear intent of the parties. Nelson v. Elway, 908 P.2d 102, 107 (Colo. 1995). Accordingly, the Court will consider only the express representations included in the Agreement to determine whether GEII is entitled to judgment on the pleadings on plaintiff's claim for negligent misrepresentation.[7]

"[A] contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations." Keller, 819 P.2d at 71. Under Colorado law, "[t]o prevail on a claim for negligent misrepresentation," a plaintiff must prove that "(1) [the defendant] supplied false information in a business transaction; (2) it failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) [the plaintiff] justifiably relied upon the false information." Alpine Bank v. Hubbell, No. 07-1190, 2008 WL 5413133, at * 7 (10th Cir. Dec. 31, 2008) (citing Campbell v. Summit Plaza Assocs., 192 P.3d 465, 477 (Colo. Ct. App. 2008)); see RESTATEMENT (SECOND) OF TORTS § 552(1). The Tenth Circuit in United International Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000), found three scenarios that could give rise to a negligent misrepresentation claim under

---

[7] Insofar as the previous Order focused on the internal/external representation dichotomy, the Court found that "the contested representation lies in the express terms of the Agreement." Dkt. # 60, at 13-14. To the extent that the parties understood the Court to conclude that the contested provision is a "representation," that was not the Court's intention. Simply put, it remains an open question whether the statement regarding the 6-day time period is a "representation" or merely an estimate or an expression of opinion. The Order is hereby amended to read "the contested alleged representation."

Colorado law: (1) where a party to a contract has deliberately made material false representations of past or present fact; (2) where a party to a contract has intentionally failed to disclose a material past or present fact; or (3) where a party to a contract has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party. Id. A claim of negligent misrepresentation cannot be based solely on the nonperformance of a promise to do something at a future time. High Country Movin', Inc. v. U.S. West Direct Co., 839 P.2d 469, 471 (Colo. Ct. App. 1992) (citing Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259 (10th Cir. 1989)). "A promise relating to future events without a present intent not to fulfill the promise is not actionable." Van Leeuwan v. Nuzzi, 810 F. Supp. 1120, 1124 (D. Colo. 1993). Similarly, an expression of opinion is not sufficient to support a cognizable claim of negligent misrepresentation. Mehaffy, Rider, Windholz, & Wilson v. Central Bank Denver, N.A., 892 P.2d 230, 237 (Colo. 1995) (citation omitted); Leece v. Griffin, 371 P.2d 264, 265 (Colo. 1962) (holding that defendant's estimate of future income from property was not a representation of fact because it was an expression of opinion as to the happening or non-happening of a future event).

Here, the question is whether the work schedule provision of the Agreement was merely an expression of opinion as to how long the work would take to complete or a promise to do something in the future with a present intent not to fulfill that promise. Plaintiff asserts that representations regarding GEII's "present capability and present possession of a process to refurbish three turbines with only six days of downtime per turbine . . . were subsequently included in the Agreement." Dkt. # 103, at 10-11. GEII contends that the provision in the Agreement stating that an "estimated outage duration of six (6) calendar days from the handover of the unit to GE[II] until the unit is handed back

to [Williams] for startup" was merely an estimate and not a representation as to a present or past existing fact.[8] Dkt. # 106-2, at 6. Colorado case law provides little guidance on how to determine whether an "estimate" of how many days it will take to complete work on a project is a representation of presently existing fact (i.e., whether defendant is presently capable of completing the work in that time period) or an expression of opinion as to a future event. It seems, however, that had the parties intended that the six day time frame be binding, the language of the Agreement would have reflected that intention. For instance, the Agreement does not state that work must be completed within six days or else GEII would incur late penalties. Thus, the better view is that the work schedule provision is merely an expression of professional opinion as to the amount of time it would take to complete the work, and was not an express representation of GEII's ability to complete the work in that time frame. GEII's estimate that the work could be completed in six days, absent any additional language in the Agreement, is not a representation of present or past fact. Accordingly, GEII is entitled to judgment on the pleadings with respect to plaintiff's claim for negligent misrepresentation.[9]

---

[8]   The Agreement states, in relevant part, that:

   The required site Work for this Contract shall commence on or about November 1, 2004 and be completed on or about November 8, 2005 with an estimated outage duration of six (6) calendar days from handover of the unit to GE[II] until the unit is handed back to [Williams] for startup."

Dkt. # 106-2, at 6.

[9]   Because plaintiff does not have a claim for negligent misrepresentation, the Court need not reach the question of whether the limitation of liability clause in the Agreement precludes plaintiff from collecting consequential damages on its negligent misrepresentation claim. The limitation of liability clause is discussed with respect to plaintiff's fraud and fraudulent concealment claims, infra at Part III C.

**B.     Willful and Wanton Misrepresentation Claim Against GEII**

Plaintiff, in its second amended complaint, asserts a claim for "willful and wanton misrepresentation" against GEII. Dkt. # 103. It is not entirely clear, however, whether plaintiff intends to state a claim for willful and wanton negligence[10] or intentional misrepresentation (i.e., fraudulent misrepresentation). Plaintiff's hybrid claim seems to include elements of both negligent and intentional conduct. Under Colorado law, willful and wanton negligence is a form of negligence that "is so aggravated as to be all but intentional." White v. Hansen, 837 P.2d 1229, 1233 (Colo. 1992). However, willful and wanton negligence is not an intentional tort because "negligence is never anything more than negligence." Id. In its claim for "willful and wanton misrepresentation," plaintiff by and large reiterates the facts it alleged for negligent misrepresentation without additional facts suggesting that GEII's conduct constitutes "aggravated" negligence. See id. To the extent that plaintiff's claim for willful and wanton misrepresentation is in essence a claim of aggravated negligent misrepresentation, because plaintiff cannot state a claim for negligent misrepresentation,

---

[10]     Willful and wanton negligence are defined as follows:

"Wanton Negligence: Reckless indifference to the consequences of an act or omission, where the party acting or failing to act is conscious of his conduct and, without any actual intent to injure, is aware, from his knowledge of existing circumstances and conditions, that his conduct will inevitably or probably result in injury to another.

Willful Negligence: Though rejected by some courts and writers as involving a contradiction of terms, this phrase is occasionally used to describe a higher or more aggravated form of negligence than "gross." It then means a willful determination not to perform a known duty, or a reckless disregard of the safety or the rights of others, as manifested by the conscious and intentional omission of the care proper under the circumstances."

BLACK'S LAW DICTIONARY 1185-86 (4th ed. 1968).

it cannot state a claim for aggravated negligent misrepresentation. To the extent that plaintiff alleges intentional or reckless conduct on the part of GEII, plaintiff has failed to allege sufficient facts to state a claim upon which relief may be granted. GEII is entitled to judgment on the pleadings on plaintiff's claim for "willful and wanton misrepresentation."

### C.   Fraud and Fraudulent Concealment Claim Against All Defendants

Plaintiff alleges that all three defendants engaged in fraud by misrepresenting facts in invoices submitted to plaintiff, and fraudulently concealed material facts related to the replacement of the first turbine. Defendants contend that they are entitled to judgment on the pleadings on both claims and argue, in the alternative, that the economic loss rule precludes recovery on both claims. Because the economic loss rule potentially bars both the fraud and fraudulent concealment claims, it will be addressed first.

#### 1.   Economic Loss Rule

The Court previously dismissed plaintiff's negligence claim on the basis of the economic loss rule. In the Order (Dkt. # 60), the Court discussed the economic loss rule as it pertained to a negligence claim. The basic requirements of the economic loss rule are as follows: The "economic loss rule," provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." Town of Alma v. Azco Constr., Inc., 10 P.3d 1256, 1264 (Colo. 2000); Grynberg v. Agri Tech, Inc., 10 P.3d 1267, 1269 (Colo. 2000). Economic loss includes those "damages other than physical harm to persons or property." Town of Alma, 10 P.3d at 1264. The economic loss rule precludes recovery in tort only when "the duty breached is a contractual duty." Jardel Enterprises, Inc. v. Triconsultants, Inc., 770 P.2d 1301, 1303 (Colo. Ct. App. 1988).

"Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004). The rule is inapplicable where "the duty breached . . . arises independent of the contract." Id. at 1304. While the economic loss rule does not preclude recovery on all claims related to a contractual transaction, it precludes recovery in tort where "the duty breached is a contractual duty." United Intern. Holdings, Inc. v. Wharf (Holdings), 210 F.3d 1207, 1226 (10th Cir. 2000). In United Intern. Holdings, Inc., the Tenth Circuit acknowledged that it is "settled in Colorado that the economic loss rule applies only to tort claims based on negligence." Id. However, the court in United Intern. Holdings, Inc. states that the reason the plaintiff's fraud case is not barred by the economic loss rule is that it "arose independently of the contract." Id. Nonetheless, although the reasoning behind the decision appears to leave some room within the economic loss rule for intentional torts that do not arise independently of the contract, the Tenth Circuit stated with no uncertainty that the economic loss rule does not apply to intentional torts. Id. See also Rhino Fund, LLLP v. Hutchins, No. 06-1172, 2008 WL 2522308, at *8 (Colo. Ct. App. June 26, 2008) (agreeing with a Florida court that intentional tort claims, such as fraud, are not barred by the economic loss rule). Despite the Tenth Circuit's ruling in United Intern. Holdings, Inc., defendants cite to a later District of Colorado case, Natural Wealth Real Estate, Inc. v. Cohen, No. 05-1233, 2007 U.S. Dist. LEXIS 5016, at * 18 (D. Colo. Jan. 27, 2007), to support their argument that the economic loss rule may nonetheless preclude fraud claims. In Natural Wealth, the court makes a distinction between fraud in the formation of a contract and fraud occurring during the performance of that contract. The court ultimately granted judgment in favor of defendant on plaintiff's fraud claim. Id. Defendants correctly note that the

12

alleged fraud and fraudulent concealment here occurred during the performance of the contract, not in its formation, and ask the Court to follow the holding in Natural Wealth. However, because the Tenth Circuit clearly stated that Colorado law prohibits the application of the economic loss rule to intentional torts, the Court declines to follow the court in Natural Wealth. Accordingly, the economic loss rule does not preclude plaintiff's fraud and fraudulent concealment claims, and each will be discussed in turn.

### 2. Fraud

To establish a prima facie case of fraud under Colorado law, a plaintiff must assert the following: "(1) 'the defendant made a false representation of a material fact;' (2) 'the party making the representation knew it was false;' (3) 'the party to whom the representation was made did not know of the falsity;' (4) 'the representation was made with the intent that it be acted upon;' and (5) 'the representation resulted in damages.'" Bennett v. Coors Brewing Co., 189 F.3d 1221, 1230 (10th Cir. 1999) (citing Brody v. Bock, 897 P.2d 769, 775-76 (Colo. 1995)). Plaintiff alleges that defendants made material misrepresentations of fact in the invoices submitted to plaintiff during overhaul of the first turbine.[11] Dkt. # 103, at 18. According to plaintiff, the invoices allegedly containing misrepresentations regarding "the seed unit, their actions, and their charges to Williams," were of past or presently existing facts, made with knowledge of their falsity, and with the intent to mislead or deceive plaintiff. Dkt. # 103. Defendants argue that plaintiff has failed to state a claim

---

[11] The Agreement contains provisions obligating defendants to perform "in a competent, diligent manner, in accordance with any mutually agreed specifications." Dkt. # 106-2, at 33  The Agreement also include provisions requiring "[c]lose cooperation" between the parties during "planning, scheduling, monitoring and evaluating job site activities." Id. In addition, defendants were required to make "appropriate recommendations" to plaintiff on a weekly basis. Id.

for fraud because the invoices "merely reflect the agreed payments under the contract and made no statements whatsoever regarding specific items of performance." Dkt. # 116. However, for the purposes of this motion, the Court need not decide whether the invoices actually contained misrepresentations of fact; it is sufficient that plaintiff has alleged the elements of a fraud claim and have offered specific facts to support that claim. Defendants are not entitled to judgment on the pleadings with respect to plaintiff's fraud claims.

### 3. Fraudulent Concealment

To state a claim for fraudulent concealment, plaintiff must allege: "(1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. First Horizon Merchant Services, Inc. v. Wellspring, 166 P.3d 166, 176 (Colo. Ct. App. 2007). See also Mallon Oil Co. v. Bowen/Edwards Assocs., Inc., 965 P.2d 105, 111 (Colo. 1998) ("A defendant has a duty to disclose to a plaintiff with whom it deals material facts that in equity or good conscience should be disclosed."). A duty to disclose, if it exists, arises "before the transaction is consummated."

RESTATEMENT (SECOND) OF TORTS § 551(2).[12]  See Mallon Oil Co., 965 P.2d at 111 (quoting RESTATEMENT); see also Level 3 Communications LLC v. Liebert Corp., 535 F.3d 1146, 1163-64 (10th Cir. 2008) (recognizing that Colorado courts apply the Restatement).  While it is not entirely clear when a transaction is "consummated," the Restatement clearly requires disclosure of subsequently acquired information, and subsequently learned information. RESTATEMENT (SECOND) OF TORTS, § 551(2)(c-d).  It is reasonable to conclude from this language that the transition is consummated when performance is complete.  The Restatement also suggests that a party with the duty to disclose is required to disclose matters he has reason to know would be important to the other party's "course of action in the transaction."  RESTATEMENT (SECOND) OF TORTS, § 551(2) cmt. c.  This comment suggests that the transaction is not limited to the act of signing the contract, but rather involves an entire course of dealing between the parties.

---

[12]   The Restatement (Second) of Torts § 551(2) provides (emphasis added):

One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Here, all of the facts allegedly concealed from plaintiff involved incidents which occurred during the performance of the contract, rather than before the contract was signed. Defendants argue that, absent a fiduciary relationship between the parties, Colorado law imposes no duty to disclose information after the "transaction is consummated." However, based on the foregoing analysis, plaintiff's claim should not be precluded on this basis alone.

Plaintiff alleges that defendants had a "duty in good conscience" to disclose material facts to plaintiff during the course of performance. Under Colorado law, parties to a contract generally have no duty to disclose matters outside of the scope of the contract. See Level 3 Communications, LLC, 535 F.3d at 1164 (citations omitted). Here, the allegedly concealed facts relate directly to performance of the Agreement, and Colorado courts have recognized that defendants may have a duty to disclose where "equity or good conscience" so mandate. Poly Trucking, Inc. v. Concentra Health Services, 93 P.3d 561, 564 (Colo. Ct. App. 2004). Because Colorado courts look to the Restatement for guidance on the duty to disclose, see Level 3 Communications, LLC, 535 F.3d at 1164, several sections of the Restatement may suggest that defendants had a duty to disclose in this case. Section 551(2)(c), for example, requires the disclosure of "subsequently acquired information" that makes a previous representation "untrue." Id. Although there is little guidance in the Colorado case law, it would seem that "subsequently acquired information" is a further indication that a transaction is consummated when performance is completed, not when the contract is executed. Here, the Agreement contains numerous provisions relating to the specifications of the parts to be used in the refurbishment. See Dkt. # 106-2. Accordingly, subsequently acquired information pertaining to the performance of the work or the quality of the parts being installed at the work site would make the representations expressly contained in the Agreement untrue. In addition, §

16

551(2)(e) requires the disclosure of facts where, based on "the customs of the trade or other objective circumstances," a party to a business transaction would "reasonably expect a disclosure of those facts." Here, the concealed information was allegedly related to the work being performed and the quality of goods and services being provided under the Agreement. It is reasonable that plaintiff would expect that defendants, in "equity and good conscience" would disclose facts concerning damaged equipment being installed at plaintiff's work site. Because the Court is required accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to plaintiff, defendant is not entitled to judgment on plaintiff's fraudulent concealment claim.

### 4. Limitation of Liability

Finally, defendants argue that, to the extent plaintiff's fraud and fraudulent concealment claims survive, the limitation of liability clause in the Agreement should be given effect. The Agreement purports to limit defendants' liability for "torts (including negligence)." Dkt. # 106-2, at 33. Colorado permits parties to limit their liability for negligence in an exculpatory clause. See Chadwick v. Colt Ross Outfitters, Inc., 100 P.3d 465, 467 (Colo. 2004). This general rule applies to exculpatory clauses as well as limitation of liability clauses. See U.S. Fire Ins. Col. v. Sonitrol Management Corp., 192 P.3d 543, 548 (Colo. App. 2008). However, most courts will not allow parties to limit their liability for intentional torts. See Rhino Fund, LLLP, 2008 WL 2522308, at *4-5 (recognizing that Colorado courts will not uphold exculpatory and limiting clauses which "relieve parties from their own willful, wanton, reckless, or intentional conduct.")(citations omitted); see also Heil Valley Ranch, Inc., 784 P.2d 781, 783 (Colo. 1989). Accordingly, the limitation of liability

clause cannot be used to relieve defendants of liability with respect to plaintiff's claims for fraud and fraudulent concealment.

**IT IS THEREFORE ORDERED** that defendants' renewed motion for partial judgment on the pleadings (Dkt. # 116) is **granted in part** and **denied in part**: it is **granted** as to plaintiff's claims for negligent misrepresentation and willful and wanton misrepresentation against GEII; it is **granted** as to plaintiff's contract claims against GEES and QCI; it is **denied** as to plaintiff's claims for fraud and fraudulent concealment against all defendants.

**DATED** this 22nd day of January, 2009.

Claire V. Eagan
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT